OPINION
{¶ 1} These consolidated appeals arise from a judgment of conviction and sentence entered in the Allen County Court of Common Pleas against defendant-appellant, Ned T. Dukes, Jr., following a jury trial in which appellant was found guilty of burglary, kidnapping and two counts of attempted rape. Defendant also appeals the judgment of the trial court adjudicating him to be a sexual predator based upon the above counts and a separate case in which he entered a plea of guilty to one count of sexual battery.
 {¶ 2} The pertinent facts and procedural history are as follows. In the first case at issue, at approximately 3:00 a.m. on March 17, 2002, two patrolmen of the Lima Police Department were dispatched to an apartment building on West Elm Street in Lima, Ohio pursuant to a 911 call from a neighbor who had heard a woman screaming in an upstairs apartment. The patrolmen were met on the first floor of the building by the neighbor who had made the 911 call and who directed them to an apartment on the second floor. Standing outside the apartment door, the patrolmen could hear a woman issuing a "terrified" scream. As one of the patrolmen called for backup, the woman's voice could be heard yelling for help. The patrolmen knocked on the door and, as they were getting ready to make an entry, the door flew open and Jessica Bowsher came running out. Bowsher, clad in a nightgown that was pulled down, was bleeding, hysterical, and crying. The patrolmen had Bowsher stand behind them as they entered the apartment with their guns drawn. While the patrolmen stood in the apartment's living room, appellant, looking bewildered and out-of-breath, approached from the kitchen.
 {¶ 3} On May 16, 2002, the Allen County Grand Jury indicted appellant on two counts of attempted rape, felonies of the second degree in violation of R.C. 2907.02(A)(2) and 2923.02; one count of kidnapping, a felony of the second degree in violation of R.C. 2905.01(A)(1); and one count of burglary, a felony of the second degree in violation of R.C.2911.12(A)(1). A two-day jury trial commenced on July 2, 2002. On July 3, 2002, the jury returned its verdict finding appellant guilty of the two counts of attempted rape and one count of burglary as indicted, and guilty of one count of kidnapping as amended upon the prosecution's motion during trial. Appellant was sentenced to terms of seven years for each count of attempted rape, a six year term for the burglary, and a six year term for the kidnapping. The trial court ordered that the seven year terms were to be served consecutively, and consecutive to two concurrent six year terms, for a total sentence of twenty years in prison.
 {¶ 4} In the second case at issue, on June 13, 2002, appellant was indicted for one count of rape, a felony of the first degree in violation of R.C. 2907.02(A)(2). On July 18, 2002, appellant entered a negotiated plea of guilty to one count of sexual battery, a felony of the third degree in violation of R.C. 2907.03(A)(1) and was sentenced to five years in prison to be served concurrently with the sentence in the first case.
 {¶ 5} On October 3, 2002, the trial court held a joint hearing in both cases to determine appellant's sex-offender classification. Appellant was adjudicated to be a sexual predator.
 {¶ 6} Appellant now appeals asserting seven assignments of error for our review.
ASSIGNMENT OF ERROR NO. I
 The trial court committed error to the prejudice of the Defendant Ned T. Dukes Jr. by allowing the State of Ohio to amend Count Three of the Indictment from that of 2905.01(A)(1) to that of 2905.01(A)(4) at the close of the State's case in chief and over the objection of the Defendant.
 ASSIGNMENT OF ERROR NO. II
 The trial court committed error to the prejudice of the Defendant Ned T. Dukes Jr. by allowing the State of Ohio to convict the Defendant of the crime of attempted rape and kidnaping [sic] because both crimes were committed with the same animus and that the kidnapping [sic], if is [sic] occurred at all, was merely incidental to the attempted rape.
 {¶ 7} For purposes of clarity and brevity, we will address the appellant's first and second assignments of error together. On the second day of trial just prior to the presentation of the defense's case, the state moved the court to amend the kidnapping charge of the indictment. The original indictment charged appellant with a violation of R.C.2905.01(A)(1) which states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage."
 {¶ 8} The state moved to amend the kidnapping count to a violation of R.C. 2905.01(A)(4) which provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." The trial court granted the state's motion and permitted the kidnapping charge to be amended.
 {¶ 9} Crim.R. 7(D) provides, in pertinent part:
 The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.
 {¶ 10} Under Crim.R. 7(D), a change in the name or identity of the charged crime occurs when an indictment is amended so that the offense alleged in the original indictment and the offense alleged in the amended indictment contain different elements requiring independent proof.[1]
Despite the amendment, appellant was still charged with kidnapping; thus, it is apparent that the amendment in the instant case did not change the name of the crime charged. However, because the two offenses contain different elements, we find that the identity of the crime was indeed changed.[2] Because the two sections of R.C. 2905.01 require proof of different elements, we find the trial court's amendment was improper. Under these circumstances, we find that appellant's conviction for violating R.C. 2905.01(A)(4) must be reversed.[3]
 {¶ 11} In light of our decision with respect to appellant's first assignment of error, our consideration of appellant's second assignment of error is rendered moot.
ASSIGNMENT OF ERROR NO. III
 The trial court committed error to the prejudice of the Defendant Ned T. Dukes Jr. by allowing the State of Ohio to convict the Defendant of the crime of burglary where the evidence clearly indicates that entry into the premises of the victim was had by invitation of the victim.
 ASSIGNMENT OF ERROR NO. V
 The trial court committed error to the prejudice of Ned T. Dukes Jr. by allowing the conviction of the Defendant against the manifest weight of the evidence.
 {¶ 12} Due to the interrelated nature appellant's third and fifth assignments of error, we will address them together. In his third assignment of error, appellant contends that his burglary conviction was not adequately supported by the evidence. Specifically, appellant asserts that the state offered no evidence that there was a trespass, an element of a burglary charge, by the appellant. Appellant maintains that he was invited by the victim into the victim's apartment; therefore, he could not have been properly convicted of burglary. As to the fifth assignment of error, appellant maintains that the manifest weight of the evidence indicates only that the appellant and Bowsher argued and fought with a knife and that only Bowsher's statements indicate an attempted rape.
 {¶ 13} In determining whether a trial court's decision is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine, in resolving conflicts in the evidence, whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[4]
A judgment supported by some competent credible evidence which goes to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[5]
Manifest weight arguments are to be sustained only in the most extraordinary cases.[6]
 {¶ 14} As indicated by various witnesses for the state, appellant arrived at Bowsher's apartment door at approximately 2:30 a.m. on March 17, 2002. Appellant's knocks awoke Bowsher who had fallen asleep on the daybed in her living room. Appellant introduced himself as "Ned," a friend of Bowsher's boyfriend's friend, Thomas Jefferson ("T.J."). He told her that T.J. had dropped him off and was outside in his car. Appellant asked if he could use Bowsher's phone so that he could call someone for a ride. Recognizing appellant as having once previously been to her apartment with T.J., Bowsher opened the door, leaving the door chain attached, and passed appellant her cordless phone.
 {¶ 15} Bowsher and a next-door neighbor both testified that appellant appeared to make one phone call. Towards the end of his phone conversation, appellant asked Bowsher for her phone number so that the party he was talking to could call him back. Bowsher told him her phone number, and appellant relayed the number to the party with whom he was speaking.
 {¶ 16} The evidence casts doubt as to whether T.J. actually dropped appellant off at Bowsher's apartment and to whether appellant actually placed a phone call. T.J. testified that although he had taken appellant to Bowsher's apartment once before March 17, 2002, he had not taken appellant there since that date. Appellant later changed his story to claim that he had walked to Bowsher's apartment from his girlfriend's residence.
 {¶ 17} With regard to the phone call, subsequent tests of the redial feature on the phone indicated that only eight numbers were entered whereas local Lima telephone numbers require ten digits. However, appellant's stepmother, Sherena Ward, claimed that she received a call from him that night asking to speak with his step-brother. Ward stated that Bowsher's number showed up on her caller ID that morning. Yet, appellant's stepmother did not recall appellant giving her appellant's phone number nor did anyone return appellant's call.
 {¶ 18} According to Bowsher, appellant asked to use the restroom while he waited for a return call, and Bowsher let him in to her apartment. She testified that she let appellant in because she thought he needed to use the phone and that T.J., her boyfriend's friend, was out front and had sent appellant up to use her phone. While appellant was in the bathroom, Bowsher sat in a chair in her living room and smoked a cigarette she had received from appellant. Bowsher testified that after appellant exited the bathroom, he sat on the living room daybed, then stood up, walked around her chair as if he was going to the kitchen, but then turned and straddled her on the chair. Bowsher attests that appellant then began playing with her breasts over her clothing.
 {¶ 19} Angered, Bowsher pushed appellant and told appellant to get off of her. Appellant then grabbed Bowsher and pulled her through the living room and kitchen to the bedroom. After pushing Bowsher onto her bed, appellant began kissing Bowsher's neck and bit her left shoulder. At this time, Bowsher felt on her leg and stomach appellant's erect penis, which he had pulled out of his pants. Further struggle ensued as Bowsher tried to run away and was stopped by appellant. Appellant pushed Bowsher back onto the bed, laid on top of her, and bit her hip.[7] He then demanded oral sex. In an effort to evade appellant's advances, Bowsher retrieved a knife from the side of the bed. They wrestled for the knife with both ending up on the floor. Now in possession of the knife, appellant told Bowsher to spread her legs. Bowsher grabbed for the knife with both hands and was successfully prying it away from appellant when he bit her right arm by the elbow. Bowsher cut her thumb, and the appellant retained control of the knife. At this point, the police knocked on the door. Appellant stood up, and Bowsher ran to the door shouting "help me," opened it, and ran out. Throughout the ordeal, Bowsher's "blood curdling" screams were heard by her downstairs neighbors, who could also hear commotion coming through Bowsher's bedroom floor.
 {¶ 20} Appellant testified that this was nothing more than a fight between friends. He claimed that after he used Bowsher's restroom, he was calling his girlfriend with whom he had just had an argument. Appellant stated that Bowsher became incensed because he was using her phone to call his girlfriend and went after him with a knife. He also claims that the fight never took place in the bedroom. This testimony is directly contradicted by the residents living directly downstairs from Bowsher who testified that it sounded as if something was going to come crashing through Bowsher's bedroom floor. When asked about the neighbors' testimony, appellant stated that this sound must have come from the kitchen when he pushed Bowsher between the kitchen table and chairs. He had no explanation for how Bowsher's white blanket had traveled from the living room to her bedroom.
 {¶ 21} Two witnesses for appellant also testified that Bowsher told them that appellant did not try to rape her. These witnesses only came forth with this information after the first day of the trial. One witness, appellant's girlfriend nicknamed "Juicy", who bears a tattoo on her back with appellant's name, testified that Bowsher told her "he ain't tried to rape me. He did not try to rape me." When Juicy asked Bowsher what appellant was trying to do, Bowsher allegedly said "all I know is he crazy. That's all I know. He crazy." According to Juicy, this was not crazy in a bad way, for Bowsher was laughing when she was saying, "that dude, he is so crazy. He crazy." Another witness for appellant testified that she and her sister were "kicking it" at Juicy's when Bowsher said "truthfully, [appellant] did not try to rape me at all."
 {¶ 22} Because we have vacated the kidnapping conviction, we must determine only whether appellant's conviction on the burglary count and two counts of attempted rape were against the manifest weight of the evidence. R.C. 2911.12(A)(1), Burglary, provides:
 No person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure any criminal offense.
 {¶ 23} Appellant contends that because he was invited in to Bowsher's apartment, he was not a trespasser. The record, however, indicates that appellant used deception to gain entry into Bowsher's apartment. Appellant lied about being sent upstairs by T.J. to make a phone call, lied about T.J. having dropped him off at Bowsher's, and fabricated the phone call.
 {¶ 24} Appellant also maintains that the evidence does not add up to attempted rape. We disagree. R.C. 2907.02, Rape, states:
 (A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 {¶ 25} The record, as set forth above, indicates that appellant purposefully attempted to engage in sexual conduct through the use of force and threat of force.
 {¶ 26} In total, a complete review of the record herein, including the victim's testimony and evidence as recited above, does not lead this Court to conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice. The verdict of the jury is supported by competent credible evidence going to all of the elements of the offenses in the case.
 {¶ 27} Appellant's third and fifth assignments of error are without merit and are overruled.
ASSIGNMENT OF ERROR NO. IV
 The trial court committed error to the prejudice of the defendant Ned T. Dukes Jr. by failing to grant the motion of the defendant for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.
 {¶ 28} In his fourth assignment of error, appellant argues that the trial court erred in overruling his Crim.R. 29 motion for acquittal. Crim.R. 29 provides, in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 29} To reverse a criminal conviction for insufficient evidence, we must be persuaded that, viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[8]
 {¶ 30} Our review of the evidence, as set forth in the discussion above and viewed in a light most favorable to the prosecution, reveals sufficient evidence for a rational trier of fact to have found the essential elements of attempted rape and burglary proved beyond a reasonable doubt. Accordingly, appellant's fourth assignment of error is without merit and is overruled.
ASSIGNMENT OF ERROR NO. VI
 The trial court committed error to the prejudice of the Defendant Ned T. Dukes Jr. by allowing hearsay testimony of Jessica Bowsher's statements made to or in the presence of Regina Moneer.
 {¶ 31} In his fifth assignment of error, appellant asserts that the trial court erred in permitting the introduction, pursuant to the excited utterance exception to the hearsay rule, of out-of-court statements made by Bowsher to her downstairs neighbor, Regina Moneer, shortly after the attempted rape.
 {¶ 32} Evid.R. 801(C) defines "hearsay" as a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 contains the general prohibition against the admission of hearsay; however, under Evid.R. 803, certain exceptions are permitted.[9]
Evid.R. 803 permits an exception for an "excited utterance," which is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[10] For a statement to be admissible under Evid.R. 803(2), it must concern " `some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties.' "[11]
 {¶ 33} In the present case, appellant had just escaped two rape attempts by appellant. Minutes later, she was still hysterical and crying when, according to Moneer, she said "he was going to kill me. I know he was going to kill me." Considering only minutes had passed since the attack and appellant's continuing hysteria, we find that there was ample evidence to support the trial court's admission of the statement under the excited utterance exception. Accordingly, appellant's sixth assignment of error is overruled.
ASSIGNMENT OF ERROR NO. VII
 The trial court committed error to the prejudice of the Defendant Ned T. Dukes Jr. by finding him to be a sexual predator, where the state failed to prove by clear and convincing evidence that the defendant has been convicted of a sexually oriented offense and that the defendant is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 34} In his final assignment of error, appellant asserts that his classification as a sexual predator was not supported by clear and convincing evidence. R.C. 2950.01(E) defines the term "sexual predator" as follows:
 [A] person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 35} Appellant was convicted of two counts of attempted rape and pled guilty to one count of sexual battery. Each of these crimes qualifies as a "sexually oriented offense" under R.C. 2950.01(D)(1)(a).[12]
Therefore, the critical issue in appellant's sexual predator hearing was whether he was "likely to engage in the future in one or more sexually oriented offenses." An offender's propensity to engage in future sexually oriented offenses, for purposes of sexual predator classification, is determined by the application and examination of certain statutory factors.[13] R.C. 2950.09(B)(2)[14] sets forth those factors that a trial court should consider when determining an offender's status as a sexual predator:
 In making a determination * * * as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 The offender's age;
 The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 The age of the victim of the sexually oriented offense* * *;
 Whether the sexually oriented offense * * * involved multiple victims;
 Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed an sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 Any mental illness or mental disability of the offender;
 The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 Whether the offender, during the commission of the sexually oriented offense for which the sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 Any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 36} After reviewing all of the testimony, evidence, and the factors listed in R.C. 2950.09(B)(2), the trial court "shall determine by clear and convincing evidence whether the offender is a sexual predator."[15] Thus, there must be sufficient evidence, as a matter of law, for the trial court to find by clear and convincing evidence that the defendant is a sexual predator. The standard of clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence', but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[16]
 {¶ 37} To fully ensure compliance with the aforementioned principals of law and to ensure the fairness of sexual predator hearings, the Supreme Court of Ohio in State v. Eppinger adopted a model procedure for sexual offender classification hearings.[17] The Ohio Supreme Court stated that there are three essential objectives to be met:
 First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. * * * [I]f the case was recently tried, the same trial court may not need to actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 Second, an expert may be required * * * to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. * * *
 Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. [18]
 {¶ 38} Further, Eppinger recognized that R.C. 2950.09 does not require the trial court to list all of the criteria, but only to consider those factors relevant to its decision.[19] The Ohio Supreme Court also noted that the sexual classification hearing is not a mandated model hearing; therefore, the aforementioned standards were suggestions offered to "aid appellate courts in reviewing the evidence on appeal and ensure a fair and complete hearing for the offender."[20] Shortly afterEppinger, the Ohio Supreme Court stressed in State v. Thompson[21] that "`the trial court should consider the statutory factors listed in R.C.2950.09(B)(2), and should discuss on the record the particular evidence
and factors upon which it relies in making its determination regarding the likelihood of recidivism.'"
 {¶ 39} In the present case, the trial court set forth and discussed each of the factors listed in R.C. 2950.09(B)(2) that it considered in rendering its decision. These factors included the appellant's age, the violent nature and cruelty of the sexual conduct, the fact that there was a different victim in each case and that the offenses were committed while under community control for a prior violation of the law. The court also considered expert testimony given by a psychologist employed by the Forensic Psychiatry Center for Western Ohio. After an hour-long interview with appellant and after reviewing police reports and witness statements, the expert considered appellant a high risk to re-offend. Upon our thorough review of the record in the sexual predator classification hearing, we find full compliance with the requirements set forth in Eppinger and Thompson and conclude that the trial court's decision was supported by clear and convincing evidence.
 {¶ 40} The appellant's seventh assignment of error is, therefore, overruled.
 {¶ 41} Having found some error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm in part and reverse in part the judgments of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgments affirmed in part, reversed in part and cause remanded.
 BRYANT, P.J., and WALTERS, J., concur.
[1] See State v. Mullins (1997), 124 Ohio App.3d 112, 114.
[2] See State v. Corrill (1999), 133 Ohio App.3d 550, 553.
[3] Mullins, supra.
[4] Thompkins, (1997), 78 Ohio St.3d 380, 387.
[5] State v. Paxton (2000), 139 Ohio App.3d 48, 50.
[6] Thompkins, supra.
[7] Bowsher's testimony as to the details of the appellant's attack correspond to bite wounds she received on her shoulder, arm and thigh.
[8] State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus; Thompkins,78 Ohio St.3d at 386.
[9] Evid.R. 803, 804, 807.
[10] Evid.R. 803(2).
[11] State v. Braden, 98 Ohio St.3d 358, 2003-Ohio-1325, ¶ 103 (citations omitted).
[12] R.C. 2950.01(D)(1)(c) provides: "`Sexually oriented offense' means * * * Regardless of the age of the victim of the offense, a violation of * * * 2905.02, 2907.03 * * * of the Revised Code."
[13] R.C. 2950.09(B)(2) version Am.Sub.H.B. No. 502, effective March 15, 2001; State v. Cathcart (Dec. 4, 2002), Shelby App. No. 17-02-20.
[14] Am.Sub.H.B. No. 502.
[15] R.C. 2950.09(B)(3).
[16] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469.
[17] State v. Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247.
[18] Id. at 166.
[19] Id.
[20] Id. at 167.
[21] (2001), 92 Ohio St.3d 584, 588, quoting Eppinger,91 Ohio St.3d at 166.